JAMES COLGAN et al., appellants,

*v.*

S. HOWELL JONES, receiver, respondent.

The appellant, who had sustained bodily injuries in a collision on a railroad, assigned his claim for damages therefor to an attorney, for $330, who was to prosecute the claim, and did so successfully. The amount eventually recovered against the railroad company was $4,000.—*Held,* (1) that the assignment, as to the excess beyond a reasonable compensation to the attorney for his services, was void as to appellant's antecedent judgment creditors; (2) that a receiver appointed under an unsatisfied execution issued on the judgment of such creditors could maintain a suit in chancery to avoid the assignment.

On appeal from a decree advised by Washington B. Williams, Esq., Advisory Master, who filed the following conclusions:

This case involves the question of the validity in equity of an assignment of a chose in action, or cause of action, for a personal tort or "trespass to the person" of the assignor.

The assignor, James Colgan, having been injured in his person by collision with a train on the Pennsylvania railroad, in January, 1885, and having therefore a supposed cause of action, with

a claim for damages against the Pennsylvania Railroad Company, made first a verbal (November 14th, 1885), and subsequently a formal written (March 10th, 1886), assignment thereof to Samuel J. Macdonald, Esq., under an agreement that he would pay the doctor's bill for attending Colgan after his injury, and also the hospital charges, amounting together to about $330. The amount of the judgment finally recovered on the claim was $4,000. The bill to set aside the assignment was filed by a receiver appointed under an unsatisfied execution issued on a judgment recovered against Colgan about a month before the verbal assignment was made on the ground of fraud.

My conclusions in this case are, briefly, as follows:

I. Complainant contends that a right of action for an injury to the person, not being assignable at common law, Mr. Macdonald could not acquire title to it. Defendant answers that it is settled by high authority that everything which is assignable will pass to executors, and that the converse is also true that everything that passes to executors is assignable; and that as our statute makes such rights in actions transmissible to executors, they have become also assignable by force of that statute. This consequence of such a statute is denied by the supreme court of Massachusetts, in *Rice* v. *Stone, 1 Allen 566*. If this question is with complainant, still I think the authorities would justify holding the contract with the attorney good to the extent of securing his compensation, and this view is acceded to by counsel for complainant.

II. But I rest the case on what seems to me more solid ground. The right in action belonged to Colgan, and the judgment was recovered for him and in his name, and became, on its recovery, an asset liable to his creditors. Mr. Macdonald sets up an assignment against this, and must show its consideration and validity as against creditors. Common justice and authority agree that an arrangement between client and attorney, pending suit for a lien for just compensation on the judgment to be recovered, is good by way of equitable assignment (*Terney* v. *Wilson, 16 Vr. 282*), though in view of the control of courts

over their practitioners, and of the peculiar relation of trust, the court will generally supervise the question of compensation, and will certainly look to it that no fraud, either actual or constructive, is permitted under the guise of compensation.    See remarks in *Schomp* v. *Schenck, 11 Vr. 195, 200.*

But if the alleged contract, especially in cases of claims for uncertain damages, is asserted as a purchase by the attorney of the subject-matter, it is met by a strong rule of public policy (independent of the doctrine of maintenance, which is not adopted in this State), arising out of the relation itself, which prevents such contract from effecting more than the securing of just compensation.    *Arden* v. *Patterson, 5 Johns. Ch. 44; Berrien* v. *McLane, 1 Hoffm. 421.*

And see Dr. Wharton's statement of rules and authorities in *1 Wharton on Contracts* §§ *426, 427, and notes.*

III. It seems clear, in this case, that, without attributing any misrepresentation to the attorney, the parties could not have had in view the real nature and effect of the alleged bargain. The value of the subject-matter could not, from the nature of the case, have been equally or fairly understood by them, nor any approximation to it.   It was, in effect, only an arrangement for a contingent fee, which is always under judicial control; for, being made by guess-work, a species of (perhaps innocent) gambling, it would be dangerous to decline such control as a matter of public policy. If, however, these parties can be supposed to have known, with some correctness, the value of the thing they were dealing with, then the inference of fraud on creditors would be irresistible to my mind.   A poor laboring man, disabled, more or less, by his injury, knowing that his claim was worth some $4,000, or thereabouts, gives it all to his lawyer, under the name of compensation, for getting it.    Evidently this is only a name.    The affair is a gift of so much as exceeds just compensation; and, if the man is indebted, cannot stand as against his creditor.

But how can we believe that it was even intended as a mere gift?   It is contrary to human experience that a man so situated should give away a large sum understandingly.   But if we are told of his indebtedness and the natural expectation that the

judgment creditors will attach the fund, a motive at once appears which renders the act consistent with human experience. He was contriving to evade the creditors. It would be too Arcadian not to see this.

The case, then, presents a dilemma. · If Colgan did not fairly and fully understand the value of the thing, so far as a man of his position ought to understand it in dealing *inops consilii* with his attorney, the bargain can only stand to the extent of compensation, and all beyond that was a gift, made ignorantly, it is true, but made while he was a debtor, and therefore constructively fraudulent as against his creditors. If he did fairly understand it, the inference is too strong to resist that he, with the co-operation of the attorney, intended to make a gift of the excess over just compensation, in order to avoid creditors.

In my opinion, the transfer as against the creditors can only stand to the extent of fair compensation, and a reference may be taken on that point.

*Mr. Samuel J. Macdonald* and *Mr. John W. Taylor*, for appellants.

*Messrs. Keen & Gummere* and *Mr. John J. Hubbell*, for respondents.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the Advisory Master.